UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

**UNITED STATES OF AMERICA,**

        Plaintiff,

vs.                                        Case No. 5:05cr44-RS-ALL

**PANHANDLE TRADING, INC.,**
**PANHANDLE SEAFOOD, INC.,**
**DANNY D. NGUYEN,**
**AN GIANG AGRICULTURAL AND FOOD**
**IMPORT EXPORT COMPANY,**
      a/k/a **AFIEX SEAFOOD INDUSTRY,**
      a/k/a **A. SEAFOOD INDUSTRY,**
**BUU HUY,**
      a/k/a **HUY BUU,**
**MEKONGFISH COMPANY,**
      a/k/a **MEKONIMEX,**
      a/k/a **MEKONGFISH,**
**CANTHO ANIMAL FISHERY PRODUCTS**
**PROCESSING EXPORT ENTERPRISE,**
      a/k/a **CAFATEX,**
**and**
**DUYEN HAI FOODSTUFFS PROCESSING**
**FACTORY,**
      a/k/a **COSEAFEX**

        **Defendants.**
_____/

### ORDER ON PANHANDLE DEFENDANTS' MOTION TO DISMISS COUNTS NINETEEN THROUGH THIRTY-TWO OF THE INDICTMENT FOR FAILURE TO STATE AN OFFENSE

    Before the Court is Panhandle Defendants' Motion to Dismiss Counts Nineteen Through Thirty-Two of the Indictment For Failure to State an Offense (Doc. 58.)

    Counts Nineteen through Thirty-Two of the Superseding Indictment (Doc. 9) charge Defendants with violating 18 U.S.C. § 542. Section 542 states, in relevant part that

> Whoever enters or introduces, or attempts to enter or introduce, into the commerce of the United States any imported merchandise by means of any fraudulent or false invoice, declaration, affidavit, letter, paper, or by means of any false statement, written or verbal, or by means of any false or fraudulent practice or appliance, or makes any false statement in any declaration without reasonable cause to believe the truth of such statement, or procures the making of any such false statement as to any matter material thereto without reasonable cause to believe the truth of such statement, whether or not the United States shall or may be deprived of any lawful duties; or
>
> Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission--
>
> Shall be fined for each offense under this title or imprisoned not more than two years, or both.

18 U.S.C. § 542.

Counts Nineteen through Thirty-Two of the Superseding Indictment allege that Defendants violated § 542 by introducing into the commerce of the United States certain fish by means of false statements, invoices, declarations, affidavits, and other papers. More specifically, the Government alleges that Defendants falsely and fraudulently "represented that the [fish] was grouper, bass or channa, when in fact the [fish] being imported was sutchi catfish (swai) or another fish species." (Doc. 9:30.)

Defendants urge dismissal of Counts Nineteen through Thirty-Two. They contend that the requirement that merchandise be introduced into American commerce "by means of" a falsity requires that the falsity be "material" to the importation. "Material," according to the interpretation proffered by Defendants, means that the fish that were allegedly imported must otherwise have been unimportable "but for" the falsity. Defendants conclude that the "but for" test has not been satisfied in this case because fish are not unimportable or illegal by nature. Thus, according to Defendants, even if it is true that Defendants made false statements, it cannot be said that the fish were imported "by means of" those false statements; rather, the fish allegedly mislabeled were otherwise importable. On that basis, Defendants contend that Counts

Nineteen through Thirty-Two fail to state an offense under § 542 and request dismissal of those counts.

The Government, while not disputing that § 542 imposes a "materiality" requirement, urges this Court to adopt a definition of "material" that is different from the "but for" definition advocated by Defendants. "Material," according to the Government, is satisfied if the alleged falsities had a "natural tendency to influence customs officials." The Government implies that the alleged falsities at issue in this case - falsely identifying fish as one type of fish when, in fact, the fish were of a different species so as to avoid certain tariffs - satisfy this "natural tendency" definition of "materiality." Accordingly, the Government contends that it has properly charged Defendants with violating § 542.

In ruling on the motion, this Court must first determine the precise scope of the charges contained in Counts Nineteen through Thirty-Two and arising under § 542. In its Order On Panhandle Defendants' Motion to Dismiss Counts Three Through Sixteen Of the Indictment On Double Jeopardy Grounds dated July 27, 2006 (Doc. 80), this Court distilled the elements necessary to establish a violation of 18 U.S.C. § 542. Citing United States v. Ven-Fuel, Inc., 602 F.2d 747 (5th Cir. 1979) as binding precedent,[1] this Court stated that an element necessary to sustain a conviction under the first paragraph of § 542 is the requirement that the falsity be "material." Quoting United States v. Rose, 570 F.2d 1358 (9th Cir. 1978), the Ven-Fuel court stated that

> Admittedly, § 542 does not on its face include the word "material." It does, however, require that the attempt to introduce imported merchandise into the United States be 'By means of any false statement.' (Emphasis added.) If the false statement is not material, it cannot be said that the attempt was made to import the merchandise 'by means of' the statement.

Id. at 1363. Thus, the "materiality" requirement arises out of the language in the first part of § 542 which reads "by means of." The second paragraph of § 542, however, includes no such phrase. The second and third paragraphs of § 542 state that:

---

[1] The Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

> Whoever is guilty of any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission–
>
> Shall be fined for each offense under this title or imprisoned not more than two years, or both.

18 U.S.C. § 542.

Conspicuously absent from these paragraphs of § 542 is the phrase "by means of." Rose and Ven-Fuel, however, relied on that phrase in requiring a showing of "materiality." Absent this phrase, a materiality requirement vanishes as an element of the offense. Indeed, decisional law relying and expanding upon Ven-Fuel supports this analysis. In United States v. Corcuera-Valor, 910 F.2d 198 (5th Cir. 1990), the court held that "[w]e emphasize that the latter part of § 542 enumerates offenses which do not require proof of materiality." (Emphasis added.) Thus, if the Government had charged Defendants under the second paragraph of § 542 which prohibits "any willful act or omission whereby the United States shall or may be deprived of any lawful duties accruing upon merchandise embraced or referred to in such invoice, declaration, affidavit, letter, paper, or statement, or affected by such act or omission," materiality would not have been an issue. However, the Superseding Indictment does not charge Defendants under the second paragraph of § 542 and instead charges Defendants only under the first paragraph of § 542. In Corcuera-Valor, the court stated that

> the government is free to prosecute without proof of materiality under the latter part of § 542, which imposes criminal liability purely for *making* a false statement in a customs declaration. The government, unfortunately, indicted [the defendants] under the first part of § 542, failing to read further to the part of § 542 that requires no proof that the false statement was the reason the goods were allowed to enter the United States.

Id. at 200. Here, the Superseding Indictment, like the indictment in Corcuera-Valor, fails to charge Defendants under the second paragraph of § 542. The Superseding Indictment tracks the statutory language, including the phrase "by means of," that is contained in the first paragraph of § 542 but omits the statutory language contained in the second paragraph of § 542. Thus, Counts Nineteen through Thirty-Two charge

Defendants only with violating the first paragraph of § 542, and the Government is required to establish materiality in order to convict Defendants.

With the scope of the charge delineated, the question that must now be answered is whether the Superseding Indictment sufficiently states an offense under the first paragraph of § 542. This question is answered by turning to the fundamental principles which guide and determine the construction of indictments. In United States v. Critzer, 951 F.2d 306 (11th Cir. 1992), the Eleventh Circuit stated that

> There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of sufficiency of the evidence . . . . The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute.
>
> An indictment must be sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense. An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime. United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985).
>
> Constitutional requirements are fulfilled 'by an indictment that tracks the wording of the statute, as long as the language sets forth the essential elements of the crime.' United States v. Yonn, 702 F.2d 1341, 1348 (11th Cir.), cert. denied, 464 U.S. 917, 104 S. Ct. 283, 78 L. Ed. 2d 261 (1983).

Id. at 307-08.

Here, Counts Nineteen through Thirty-Two of the Superseding Indictment satisfy these requirements. The charges contained in Counts Nineteen through Thirty-Two track the language of the first paragraph of 18 U.S.C. § 542 almost exactly. In addition, the statutory language of § 542 sufficiently sets forth the essential elements of the crime. Incorporated into the counts are factual allegations specific to Defendants which clearly apprise them of the facts on which the charges are based. Specifically, Counts Nineteen through Thirty-Two charge, in relevant part

> That on or about the dates specified below, in the Northern District of Florida and elsewhere, the defendants did knowingly and willfully enter and introduce, and attempt to enter and introduce, into the commerce of the United States, imported

>        merchandise, that is, sutchi catfish, by means of false
>        statements and by means of false and fraudulent invoices,
>        declarations, affidavits and certain other papers, that is,
>        Customs entry summaries, said statements, invoices,
>        declarations, affidavits and summaries being hereinafter
>        described by 'Entry Number' and 'Date of Entry,' which said
>        documents the defendants knew and did reasonably believe
>        were false and fraudulent in that they did not truthfully identify
>        the merchandise which was being imported into the United
>        States, in that the invoices, declarations and Customs entry
>        summaries falsely and fraudulently represented that the
>        merchandise was grouper, bass or channa, when in fact the
>        merchandise being imported was sutchi catfish (swai) or
>        another fish species.

(Doc. 9:30.) A table of information specific to each count then follows the charge. The information includes (1) the count number; (2) the names of the Defendants charged; (3) the date on which the alleged offense was committed; and (4) the entry number referred to in the charge. This information is "sufficiently specific to inform the defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense." Critzer, 951 F.2d at 307.

Even assuming, without deciding, that the "but for" test of materiality that is advocated by Defendants is correct, Defendants basically ask this Court to pierce the face of the indictment and to conclude that the Government's allegations fail to satisfy the "but for" test of materiality. Such a task, however, would require this Court to venture into a factual inquiry that is inappropriate when assessing the merits of a motion to dismiss. Defendants, citing to Ven-Fuel, inaccurately state that "[t]he materiality of an alleged false statement is a question of law for the court." (Doc. 59:2 ¶ 5.) What the Ven-Fuel court actually stated was that "[t]he materiality of a false statement 'rests upon a factual evidentiary showing, but the ultimate decision is a legal one.'" Ven-Fuel, 602 F.2d at 753 (quoting United States v. Beer, 518 F.2d 168, 172 (5th Cir. 1975)). Consistent with this statement, the Ven-Fuel court's conclusion that the misrepresentations were immaterial as a matter of law was based on the factual evidence adduced at trial and at oral argument during appeal. The court's decision did not follow a motion to dismiss. In making its decision, the court in Ven-Fuel relied on factual evidence including the existence of a throughput agreement, the requirements

for obtaining an import license, the existence of a letter containing a right-to-cancel clause, and applicable regulations. Ven-Fuel, 602 F.2d at 753. Here, the factual record is undeveloped. Thus, even assuming but not deciding that the "but for" test for materiality is correct, this Court has no basis for concluding that the fish would still have been importable regardless of whether false statements were made. Although Defendants contend that but for the false statements the fish would have been importable because they are not illegal, Defendants cite to no authority that goods must be illegal per se in order to render them unimportable. It may also be illegal to import goods when, as it is alleged here, the correct duties have not been paid. This may be particularly true when, as alleged here, the United States Department of Commerce has issued a final anti-dumping duty order mandating the imposition of duties on the fish alleged to have been mislabeled. (Doc. 9:4-5 ¶¶ 3-7.) In essence, the relationship between the applicable law, the final anti-dumping order, the duties that allegedly were not paid before importation, and the alleged mislabeling of the fish requires further factual development before it can truly be determined whether even under the "but for" definition of materiality that is advanced by Defendants, the fish would otherwise have been barred from entry.

Defendants rely on United States v. Teraoka, 669 F.2d 577 (9th Cir. 1982). In Teraoka, Defendant was a salesman for a company which imported nails into the United States. The indictment charged Defendant with fraudulently inflating the purchase price of the nails just at or nominally above its "trigger price." Products which were sold below the "trigger price" alerted customs officials that the merchandise was being or was likely to be sold in the United States at less than fair market value, creating possible injury to an American industry. A possible investigation would ensue and if the purchase price or foreign sales price of the merchandise was less than its foreign market value, a special dumping assessment would be levied and collected in an amount equal to the difference. The defendant in Taraoka avoided this "trigger price mechanism" (TPM) by adding a price premium to the contract price in order to create a nominal price at or above the applicable trigger price. This nominal price appeared on the invoice documents. The buyer would then recoup the premium by filing a false damaged merchandise claim with the Defendant's company in the amount of the

premium. The indictment charged the defendant with violating 18 U.S.C. § 542. Affirming the trial court's decision to dismiss the indictment based on its conclusion that the false statements contained in the invoices were not "material," the Ninth Circuit in Taraoka stated that

> The district court ruled that unless it could be said that the false statements in the invoice documents had enabled the goods to enter the country (in that the truth would have barred entry) it could not be said that entrance of the goods had been 'by means of' the false statements. We agree with that construction of § 542. The court then ruled that under the statute as so construed the nails had not been imported by means of a false invoice statement. Again we agree.

Id. at 579. The next portion of the Ninth Circuit's analysis is crucial in distinguishing the facts in Taraoka from the facts in this case:

> The protection established against dumping of foreign goods is not to deny entrance of goods but to impose a special duty on the goods. As a result, the . . . nails at issue would have been permitted to enter the country even had correct invoice prices been submitted showing the sale price to be less than the trigger price. The TPM then has no effect whatsoever on importation. It is a monitoring mechanism only intended to alert Customs officials to the likelihood that a special assessment may be called for.

Id.

Here, unlike the TPM in Taraoka which had no effect on importation and was only intended to alert customs officials to a mere *likelihood* that a special assessment may be called for, the facts in this case are just the opposite: the Superseding Indictment alleges that the Commerce Department *not only* investigated allegations that the fish were being undersold, but it even issued a "final anti-dumping order," case number A-552-801, which actually imposed a duty on the fish. (Doc. 9:4-5 ¶¶ 3-7.) It is that mandatory duty which the Government alleges Defendants attempted to circumvent by falsely labeling the fish as one species when, in fact, it was another species. Surely, Defendants' alleged failure to pay the correct and *mandatory* duty on a product sought to be imported into the United States might have prevented the importation of that product. At the very least, the final dumping order and its alleged circumvention by

Defendants distinguishes this case from the hypothetical and speculative possibilities associated with the TPM in Teraoka.  If Defendants failed to pay a mandatory duty on the fish they sought to import and if falsely labeling those fish allowed them to escape paying the required duties and to import fish which would otherwise have been unimportable but for the payment of those duties, this Court fails to see how the Government has not satisfied even the "but for" test of materiality advanced by Defendants.

Once the factual record is further developed and if Defendants still maintain that the "but for" test of materiality has not been satisfied by the Government, they may request a directed verdict on Counts Nineteen through Thirty-Two.  Only then can the Court examine the evidence and decide as a matter of law whether the Government has satisfied the "but for" test.  If the Government fails to satisfy the "but for" test of materiality, this Court will then be required to assess which test - "but for" or "natural tendency" - is correct and apply the facts to the appropriate test.  Such inquiries, however, are premature and inappropriate when assessing the merits of a motion to dismiss.  The face of the Superseding Indictment satisfies the requirements established by the Eleventh Circuit and sufficiently states an offense.  On that basis, the motion to dismiss must be denied.

## CONCLUSION

Panhandle Defendants' Motion to Dismiss Counts Nineteen through Thirty-Two of the Indictment for Failure to State an Offense (Doc. 58) is **denied**.

**ORDERED** on August 3, 2006.

**/s/ Richard Smoak**
**Richard Smoak**
**United States District Judge**